DOCKETED
AUG 2 - 2004

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| LINDA MACCHIA, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 04C |
| | ) | |
| v. | ) | Honorable , |
| | ) | Judge Presiding. |
| LOYOLA UNIVERSITY MEDICAL CENTER, | ) | |
| | ) | Honorable , |
| | ) | Magistrate Judge |
| Defendant. | ) | |
| | ) | JURY DEMANDED |

**COMPLAINT**

NOW COMES the Plaintiff, LINDA MACCHIA, by and through her attorneys, John P. De Rose and Associates, and complains of Defendant, LOYOLA UNIVERSITY MEDICAL CENTER and states as follows:

**JURISDICTION**

1. The jurisdiction of this Honorable Court is brought pursuant to the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. § 12101, et. al., and the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988. The jurisdiction of this Honorable Court is also invoked pursuant to 28 U.S.C. § 1331 and 1343. The Court is also requested to exercise its supplemental jurisdiction to hear pendent state claims under the same action.

**PARTIES**

2. Plaintiff, LINDA MACCHIA, (hereinafter sometimes referred to as "Plaintiff"), is a



1-1

resident of the State of Illinois and a citizen of the United States of America.

3. Defendant LOYOLA UNIVERSITY MEDICAL CENTER, (hereinafter sometimes referred to as "Defendant"), is an Illinois corporation with its principal place of business in Maywood, Illinois and at all times relevant to this complaint is an employer within the meaning of the ADA.

## FACTS

4. On or around September of 1998, Plaintiff, LINDA MACCHIA, was hired by Defendant, Loyola University Medical Center.

5. Plaintiff began her employment as a floating secretary, then as a general medical service representative and then a service representative in the Anticoagulation Clinic.

6. On Friday, December 15th, 2000 at approximately 4:45 PM, Plaintiff fell in parking lot # (9) nine, a key card entry employee lot at Loyola University Medical Center.

7. Plaintiff began to develop pain and swelling in her fingers, hands, lower back and knees, and back and leg spasms.

8. Plaintiff returned to work on Tuesday, December 19th, 2000. Plaintiff informed a supervisor of her injury and the supervisor recommended Plaintiff immediately go to "Occupational Health."

9. Plaintiff's condition continued to deteriorate over the next week, the Christmas holiday.

10. On Wednesday, December 27th, 2000, Plaintiff returned to Occupational Health. She informed them that her pain and spasms were getting worse, her legs were feeling numb and she was having trouble walking. Dr. Woody at Occupational Health informed her that she would not be able to receive workman's compensation time and should return to

work. Dr. Woody also stated that x-rays were not necessary and the injury could be treated with medication and therapy.

11. After returning to her job from the Occupational Health center, Plaintiff informed her supervisor that if she was not allowed any workman's compensation time, she would have to take personal time because she could not perform her occupational duties due to the pain.

12. With consent of the Occupational Health center, Plaintiff saw a chiropractor. On January 2nd, 2001, after two treatments, the chiropractor refused treatment after observing changes in her leg coordination and demanded she return to Loyola for further diagnosis.

13. On January 3rd, 2001, Plaintiff went to the Human Resources department at Loyola University Medical Center. Plaintiff requested treatment from a specialist or the emergency room. Plaintiff was directed by Kathy Kiley back to the Occupational Health center.

14. Dr. Woody re-examined the Plaintiff and referred her to Dr. Ghanayem, an orthopedic out-patient doctor at Loyola University Medical Center. Plaintiff requested that Dr. Woody send her to a neurosurgeon, but Dr. Woody told her that neurosurgeons do not get involved with workman's compensation cases.

15. That same day, January 3rd, 2001, Plaintiff saw Dr. Ghanayem who ordered x-rays and an MRI.

16. Plaintiff had an MRI taken on Friday, January 5th, 2001. After examining the results, Dr. Ghanayem determined that Plaintiff had a slight herniation of the L4-L5 vertebrae. Dr. Ghanayem referred Plaintiff to Dr. Patel, an anesthesiologist for a cortisone shot.

17. On January 9th, 2001, Plaintiff saw Dr. Patel. Dr. Patel did an extensive examination and determined that a cortisone shot was not the appropriate treatment, and that the Plaintiff required additional care. Dr. Patel called Dr. Ghanayem, and requested that the Plaintiff meet Dr. Ghanayem at the Loyola emergency room immediately.

18. Dr. Ghanayem ordered another MRI of the cerebral area and cervical region of the neck.

19. Plaintiff had the MRI done the next morning, Wednesday, January 10th, 2001. The MRI revealed that the Plaintiff's C5-C6 vertebrae were pressing on her spinal cord, which required immediate, emergency surgery.

20. On Friday, January 12th, 2001, Plaintiff underwent an emergency Anterior Cervical Laminectomy.

21. Over the next 6 months after the surgery, the Plaintiff's condition improved, but then began to deteriorate. Dr. Ghanayem, who followed up after the surgery, determined that additional surgery was necessary. Plaintiff sought a second opinion from Dr. Kazan, a neurosurgeon, who concurred that additional surgery was necessary.

22. On July 1st, 2001, Plaintiff underwent her second surgery, a Cervical Laminoplasty for Posterior Decompression by Dr. Ghanayem at the Loyola University Medical Center.

23. On October 1st, 2001, Plaintiff returned to work with restrictions such as no lifting and no overhead and ergonomic changes to her work station.

24. On August 28th, 2002, Plaintiff's restrictions were amended to include no more than two hours of typing per eight hour work day.

25. On or around September 23rd, 2002, Plaintiff was informed that HR was unable to accommodate her restrictions and they would try and locate another job for her.

26. On December 19th, 2002, Plaintiff was forced onto long term medical leave by the Family/Medical Leave Act.

27. Plaintiff inquired about several jobs, with Loyola's consent, within the hospital while on leave, but was advised that she was not qualified due to her restrictions.

28. On April 3rd, 2003, Loyola offered Plaintiff a position as a service representative in the General Medical Clinic. During an interview for the job, Plaintiff asked about the appropriate accommodations for her restrictions. Plaintiff was told she had no restrictions. She could either take the job or she was "out."

29. Plaintiff took the job on April 12th, 2003.

30. During the next several months Plaintiff was criticized for being too slow, tardy, and not keeping up with the other workers.

31. On August 20th, 2003, Dr. Ghanayem sent a letter to Dr. Woody informing her that the Plaintiff's restrictions are "permanent and should not be ignored."

32. Plaintiff was fired on January 19th, 2004 for failure to perform job duties and unprofessional behavior.

33. Plaintiff appealed the termination on January 22nd, 2004. On February 24th, 2004 her appeal was denied.

34. On June 14th, 2004, Plaintiff filed a charge of discrimination based on disability with the Illinois Department of Human Rights, Equal Employment Opportunity Commission. Attached as exhibit "A".

35. On June 28th, 2004, Plaintiff received a notice of right to sue from the Equal Employment Opportunity Commission. Attached as exhibit "B".

**COUNT I**

**DISABILITY DISCRIMINATION IN EMPLOYMENT**

1-35. Plaintiff repeats and realleges Paragraphs 1 through 35 of this Complaint as Paragraphs 1 through 35 of Count I as though fully set forth herein.

36. Plaintiff was able to perform the essential functions inherent in the position of service representative at the Defendant company.

37. Defendant was aware of Plaintiff's cervical injuries since Plaintiff repeatedly told various agents of the Defendant in addition to letters from Dr. Ghanayem outlining her work restrictions.

38. Specifically, Plaintiff openly requested accommodations due to her medical condition.

39. Plaintiff repeatedly requested that Defendant make some type of reasonable accommodation for her disability.

40. During the course of Plaintiff's employment with Defendant, Defendant failed to make reasonable effort to accommodate Plaintiff's disability.

41. Defendant's refusal to accommodate Plaintiff's disability was without reasonable cause or legal justification.

42. That on or about June 14th, 2004, Plaintiff filed a Request for Review, Charge Number 210-2004-05322, with the State of Illinois Department of Human Rights and through automatic contemporaneous filing with the United States Equal Employment Opportunity Commission (EEOC), alleging discrimination because of disability in violation of the Americans with Disabilities Act of 1990.

43 On June 28th, 2004, the EEOC issued to Plaintiff a Notice of Right-to-Sue in connection

with her charge of discrimination.

WHEREFORE, Plaintiff, LINDA MACCHIA, respectfully prays for judgment against Defendant as follows:

A. Judgment for compensatory damages in favor of Plaintiff, and against the Defendant in an amount in excess of $100,000.00;

B. Punitive damages from the Defendant in an amount in excess of $100,000.00;

C. Reasonable attorney's fees as permitted by 42 U.S.C. Section 1988;

D. Costs of this suit; and

E. Such other relief as may be proper and just.

**COUNT II**

**RETALIATION IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT**

1-43. The Plaintiff repeats and realleges Paragraphs 1 through 43 of Count I as Paragraphs 1 through 43 of Count II as though fully set forth herein.

44. On Friday, December 15th, 2000, Plaintiff fell in the Defendant's employee parking lot.

45. As a result of the fall, the Plaintiff has suffered severe neck, back and leg injuries. The Plaintiff underwent emergency surgery to relieve a cervical disc from pressing on her spinal cord on January 10th, 2001. Plaintiff underwent a second surgery to on July1st, 2001 after the Plaintiff's condition began to deteriorate.

46. On October 1st, 2001, Plaintiff return to work for Defendant, with certain work restrictions as prescribed by her surgeon.

47. Defendant refused to make the reasonable, appropriate accommodations for the Plaintiff.

48. On January 19th, 2004, Plaintiff was fired.

49. Defendants retaliated against the Plaintiff by terminating her employment for requesting that the restrictions mandated by her surgeon and doctor and mandated by the Americans with Disability Act.

50. Defendant's have retaliated against the Plaintiff by terminating her without cause, and any given by the Defendant is mere pretext.

51. Plaintiff has suffered, is now suffering and will continue to suffer irreparable injury and monetary damages as a direct and proximate cause of the Defendant's retaliatory practices.

WHEREFORE, Plaintiff, LINDA MACCHIA, respectfully prays for judgment against Defendant as follows:

A. Judgment for compensatory damages in favor of Plaintiff, and against the Defendant in an amount in excess of $100,000.00;

B. Punitive damages from the Defendant in an amount in excess of $100,000.00;

C. Reasonable attorney's fees as permitted by 42 U.S.C. Section 1988;

D. Costs of this suit; and

E. Such other relief as may be proper and just.

**COUNT III**

**RETALIATION IN VIOLATION OF ILLINOIS WORKMEN'S COMPENSATION ACT**

1-51. The Plaintiff repeats and realleges Paragraphs 1 through 51 of Count I as Paragraphs 1 through 51 of Count II as though fully set forth herein.

52. Plaintiff began receiving Workmen's Compensation on or around January 10th, 2001. On or around June 22nd, 2001, Defendant cut off Plaintiff's compensation.

53. On July 1st, 2001, Plaintiff underwent her second surgery by Dr. Ghanayem. Plaintiff returned to work on October 1st, 2001.

54. Plaintiff initiated a workmen's compensation claim with the State of Illinois Industrial Commission. The Industrial Commission found that Plaintiff was entitled to workmen's compensation for the period from her first surgery, January of 2001, until she returned to work in October of 2001.

55. From October of 2001, to approximately December of 2002, Plaintiff worked for Defendant with restrictions set forth by her doctor.

56. On or around August of 2002, Defendant informed Plaintiff that they were unable to accommodate her restrictions as prescribed by her doctor.

57. Plaintiff was forced to take long term medical leave under the Family/Medical Leave Act without pay or compensation on December 19th, 2002.

58. Plaintiff returned to work on April 13th, 2003 and was not accommodated in any way for her physical disabilities.

59. On January 19th, 2004, Plaintiff was fired.

60. Plaintiff was entitled to workmen's compensation from December 19th, 2002 to April 13th, 2003 and from the date of her termination, January 19th, 2004, to the present.

61. Defendants retaliated against the Plaintiff by terminating her employment for filing a Workmen's Compensation claim and requesting benefits in violation of the Illinois Workmen's Compensation Act.

62. Defendant's have retaliated against the Plaintiff by terminating her without cause, and any given by the Defendant is mere pretext.

63. Plaintiff has suffered, is now suffering and will continue to suffer irreparable injury and monetary damages as a direct and proximate cause of the Defendant's retaliatory practices.

WHEREFORE, Plaintiff, LINDA MACCHIA, respectfully prays for judgment against Defendant as follows:

A. Judgment for compensatory damages in favor of Plaintiff, and against the Defendant in an amount in excess of $100,000.00;

B. Punitive damages from the Defendant in an amount in excess of $100,000.00;

C. Reasonable attorney's fees as permitted by 42 U.S.C. Section 1988;

D. Costs of this suit; and

E. Such other relief as may be proper and just.

**COUNT IV**

**WRONGFUL TERMINATION UNDER ILLINOIS LAW**

1-63. The Plaintiff repeats and realleges Paragraphs 1 through 62 of Count I as Paragraphs 1 through 62 of Count II as though fully set forth herein.

64. On January 19th, 2004, Plaintiff, LINDA MACCHIA was terminated by Defendant without cause or justification and any reason given is mere pretext.

65. Plaintiff was terminated because the Defendant did not want to make the appropriate, mandated accommodations.

66. The termination of the Plaintiff was in violation of clearly mandated public policy as set forth in the Americans with Disabilities Act, 42 U.S.C. § 12101, et al. and the Illinois Workmen's Compensation Act, 820 ILCS 305/4.

67. No other reasonable cause or justification existed for the termination of Plaintiff's employment, and any reason given by Defendant is mere pretext.

68. By wrongfully discharging Plaintiff without cause or justification, and for the wrongful reasons set forth above, Defendant acted willfully and with malice toward Plaintiff.

69. As a direct and proximate cause of this wrongful and unlawful action by Defendants, Plaintiff has suffered the loss of her employment, the loss of salary and benefits, damages to her reputation and future earning potential and emotional pain and suffering.

70. The actions of the Defendant, Loyola University Medical Center, were done deliberately and willfully or with such gross negligence as to indicate wanton disregard for Plaintiff's rights.

WHEREFORE, the Plaintiff, LINDA MACCHIA, respectfully asks this Honorable Court to grant the following relief:

A. Judgment for compensatory damages in favor of Plaintiff, and against the Defendant in an amount in excess of $100,000.00;

B. Punitive damages from the Defendant in an amount in excess of $100,000.00;

C. Reasonable attorney's fees as permitted by 42 U.S.C. Section 1988;

D. Costs of this suit; and

E. Such other relief as may be proper and just.

## COUNT V

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

1-70. The Plaintiff repeats and realleges Paragraphs 1 through 70 of Count II as Paragraphs 1 through 70 of Count III as though fully set forth herein.

71. The Defendant's conduct of intentionally discriminating and harassing Plaintiff because of his disability was extreme and outrageous.

72. The Defendant's conduct of terminating Plaintiff, despite having knowledge of Plaintiff's request for employment accommodation, was extreme and outrageous.

73. The Defendant's actions were intentional and the Defendant knew that there was a high probability that their conduct would cause severe emotional distress to the Plaintiff.

74. By wrongfully discharging Plaintiff without cause or justification, and for the wrongful reasons set forth above, Defendant acted willfully and with malice toward Plaintiff.

75. As a direct and proximate cause of this wrongful and unlawful action by Defendant, Plaintiff has suffered the loss of her employment, the loss of salary and benefits, damages to her reputation and future earning potential and emotional pain and suffering.

76. The actions of the Defendant, Loyola University Medical Center, were done deliberately and willfully or with such gross negligence as to indicate wanton disregard for Plaintiff's rights.

77. The Plaintiff has suffered severe emotional distress as a direct result of the Defendant's actions and the willful disregard of her rights.

WHEREFORE, the Plaintiff, LINDA MACCHIA, respectfully asks this Honorable Court to grant the following relief:

A. Judgment for compensatory damages in favor of Plaintiff, and against the Defendant in an amount in excess of $100,000.00;

B. Punitive damages from the Defendant in an amount in excess of $100,000.00;

C. Reasonable attorney's fees as permitted by 42 U.S.C. Section 1988;

D. Costs of this suit; and

E. Such other relief as may be proper and just.

Respectfully submitted,

John P. De Rose

John P. De Rose and Associates
15 Spinning Wheel Road
Suite 428
Hinsdale, Illinois 60521
(630) 920-1111

EEOC Form 5 (5/01)

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form.

Charge Presented To: ☐ FEPA ☒ EEOC

Agency(ies) Charge No(s): 210-2004-05322

Illinois Department Of Human Rights and EEOC

State or local Agency, if any

| Name (Indicate Mr., Ms., Mrs.) | Home Phone No. (Incl Area Code) | Date of Birth |
|---|---|---|
| Ms. Linda Macchia | (708) 447-5244 | |

Street Address / City, State and ZIP Code: 2502 South Park Avenue, North Riverside, IL 60546

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (*If more than two, list under PARTICULARS below.*)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| LOYOLA UNIVERSITY MEDICAL CENT | 500 or More | (708) 216-1067 |

Street Address / City, State and ZIP Code: 2160 S. First Avenue, Maywood, IL 60153

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| | | |

Street Address / City, State and ZIP Code:

DISCRIMINATION BASED ON (*Check appropriate box(es).*)

☐ RACE ☐ COLOR ☐ SEX ☐ RELIGION ☐ NATIONAL ORIGIN
☐ RETALIATION ☐ AGE ☒ DISABILITY ☐ OTHER (*Specify below.*)

DATE(S) DISCRIMINATION TOOK PLACE

Earliest: 09-23-2002 Latest: 01-19-2004

☒ CONTINUING ACTION

THE PARTICULARS ARE (*If additional paper is needed, attach extra sheet(s)*):

**I. I was hired by Respondent in September 1998 as Service Representative. On December 15, 2000 I injured myself while at work which resulted in my disability. Since September 23, 2002 and continuing, Respondent refused to provide me with a reasonable accommodation. Respondent also refused to hire me into available position which I can perform without any accommodation. In April 2003 Respondent forced me to accept a service representative position with no reasonable accommodation. On January 19, 2004 I was discharged from my position.**

**II. I believe that Respondent discriminated against me because of my disability, in violation of the Americans with Disabilities Act of 1990.**

RECEIVED EEOC
JUN 14 2004
CHICAGO DISTRICT OFFICE

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

NOTARY – *When necessary for State and Local Agency Requirements*

I declare under penalty of perjury that the above is true and correct.

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.

SIGNATURE OF COMPLAINANT

Jun 14, 2004 — Linda Macchia

Date — Charging Party Signature

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (*month, day, year*)

Exhibit A

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

# NOTICE OF RIGHT TO SUE

(Issued on request)

| To: Linda Macchia<br>2502 South Park Avenue<br>North Riverside, IL 60546<br><br>CERT. MAIL #.: 7099 3400 0006 730 3 2919 C/P<br><br>☐ *On behalf of a person aggrieved whose identity is CONFIDENTIAL (29 C.F.R. 1601.7(a))* | From:<br>Chicago District Office<br>Equal Employment Opportunity Commission<br>500 West Madison Street, Suite 2800<br>Chicago, IL 60661-2511 |
|---|---|

| Charge Number | EEOC Representative | Telephone Number |
|---|---|---|
| 210-2004-05322 | Regina Husar, Enforcement Supervisor | (312) 353-0819 |

( See the additional information attached to this form )

**TO THE PERSON AGGRIEVED:** This is your NOTICE OF RIGHT TO SUE. It is issued at your request. If you intend to sue the respondent(s) named in your charge, YOU MUST DO SO WITHIN NINETY (90) DAYS OF YOUR RECEIPT OF THIS NOTICE: OTHERWISE YOUR RIGHT TO SUE IS LOST.

☐ More than 180 days have expired since the filing of this charge.

☒ Less than 180 days have expired since the filing of this charge, but I have determined that the Commission will be unable to complete its process within 180 days from the filing of the charge.

☒ With the issuance of this NOTICE OF RIGHT TO SUE, the Commission is terminating its process with respect to this charge.

☐ It has been determined that the Commission will continue to investigate your charge.

☐ **ADEA:** While Title VII and the ADA require EEOC to issue this notice of right to sue before you can bring a lawsuit, you may sue under the Age Discrimination in Employment Act (ADEA) any time 60 days after your charge was filed until **90 days after you received notice that EEOC has completed action on your charge.**

☐ **Because EEOC is closing your case,** your lawsuit under the ADEA must be brought within 90 days of your receipt of this notice. Otherwise, your right to sue is lost.

☐ **EEOC is continuing its investigation.** You will be notified when we have completed action and, if appropriate, our notice will include notice of right to sue under the ADEA.

☐ **EPA:** While Title VII and the ADA require EEOC to issue this Notice of Right to Sue before you can bring a lawsuit, you already have the right to sue under the Equal Pay Act (EPA) (You are not required to complain to any enforcement agency before bringing an EPA suit in court). EPA suits must be brought within 2 years (3 years for willful violations) of the alleged EPA underpayment.

On Behalf of the Commission

June 28, 2004
(Date)

John P. Rowe RH
John P. Rowe, District Director

Enclosures
Information Sheet
Copy of Charge

cc: Respondent(s) Loyola University Medical Center



Exhibit B

#2

DOCKETED
AUG 2 - 2004

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

# Civil Cover Sheet

This automated JS-44 conforms generally to the manual JS-44 approved by the Judicial Conference of the United States in September 1974. The data is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. The information contained herein neither replaces nor supplements the filing and service of pleadings or other papers as required by law. This form is authorized for use only in the Northern District of Illinois.

---

**Plaintiff(s): Linda Macchia**
County of Residence: Cook
Plaintiff's Atty: John P. DeRose
John P. DeRose and Associates
15 Spinning Wheel Road, Suite 428, Hinsdale, Illinois 60521
(630) 920-1111

**Defendant(s):Loyola University Medical Center**
County of Residence:
Defendant's Atty:

**04C 5049**

---

II. Basis of Jurisdiction: **3. Federal Question (U.S. not a party)**

JUDGE COAR

III. Citizenship of Principal Parties **(Diversity Cases Only)**
Plaintiff:- **N/A**
Defendant:- **N/A**

MAGISTRATE JUDGE GERALDINE SOAT BROWN

IV. Origin : **1. Original Proceeding**

V. Nature of Suit: **440 Other Civil Rights**

VI.Cause of Action: **42 U.S.C. 12101 - Americans with Disability Act**

VII. Requested in Complaint
Class Action: **No**
Dollar Demand: **In excess of $100,000.00**
Jury Demand: **Yes**

VIII. This case **IS NOT** a refiling of a previously dismissed case.

---

**Signature:** [signature]

**Date:** 7-29-04 (30)

If any of this information is incorrect, please go back to the Civil Cover Sheet Input form using the *Back* button in your browser and change it. Once correct, print this form, sign and date it and submit it with your new civil action. **Note: You may need to adjust the font size in your browser display to make the form print properly.** **Revised: 06/28/00**

1-2