# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | David H. Coar | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 04 C 5049 | **DATE** | 10/19/2004 |
| **CASE TITLE** | Linda Macchia vs. Loyola University Medical Center | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Motion of Defendant LUMC to Dismiss Counts II, IV, and V of the Plaintiff's Complaint

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] For the reasons discussed in the attached memorandum and opinion, Defendant's Motion to Dismiss Counts II, IV, and V of Plaintiff's Complaint [Doc. No. 5] is denied as to Counts II and IV, and granted as to Count V.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | number of notices | Document Number |
|---|---|---|---|---|
| | No notices required. | | | |
| | Notices mailed by judge's staff. | | OCT 2 5 2004 | |
| | Notified counsel by telephone. | | date docketed | 9 |
| ✓ | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | | |
| mvf(lc) | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| LINDA MACCHIA )<br>)<br>Plaintiff, )<br>) No. 04 C 5049<br>v. )<br>) HONORABLE DAVID H. COAR<br>LOYOLA UNIVERSITY MEDICAL )<br>CENTER )<br>)<br>Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Before this Court is Defendant Loyola University Medical Center's Motion to Dismiss Counts II, IV and V of Plaintiff's Complaint. For the reasons set forth in the following opinion, Defendant's Motion to Dismiss Plaintiff's Counts II, IV, and V is denied in part and granted in part.

## I. Background

Plaintiff Linda Macchia ("Macchia" or "Plaintiff") brings a claim under the Americans with Disabilities Act and under Illinois state law for disability discrimination in employment, wrongful termination, and intentional infliction of emotional distress. The facts underlying her complaint are as follows. On or about September 1998, Defendant Loyola University Medical Center ("LUMC" or "Defendant") hired Macchia. Plaintiff began her employment at LUMC as a floating secretary, and subsequently worked as a general medical service representative and finally as a service representative in the Anticoagulation Clinic.

On the afternoon of Friday, December 15, 2000, Plaintiff fell in one of the key card parking lots at LUMC. Plaintiff began to develop pain and swelling in her fingers, hands, lower back and knees, and back and leg spasms. Plaintiff returned to work the following Tuesday and informed a supervisor of her injury. The supervisor directed Plaintiff to the Occupational Health facility at LUMC. Plaintiff went to the Occupational Health center again in the days after the Christmas holiday, and informed the doctor there that her pain and spasms were getting worse. The Occupational Health center doctor stated that x-rays were unnecessary, that Plaintiff would not receive worker's compensation time, and directed Plaintiff to return to work. Plaintiff then informed her supervisor that she would have to take personal time because she was unable to perform her work duties due to the pain of her injuries.

In January 2001, Plaintiff visited a chiropractor with the consent of LUMC's Occupational Health center. On her second visit, the chiropractor observed changes in Plaintiff's condition and refused to provide additional treatment without further diagnosis from LUMC. Plaintiff requested treatment by a specialist or emergency room physician; LUMC Human Resources personnel directed her to return to the Occupational Health center. Plaintiff was re-examined and referred to an orthopedist at LUMC, who saw her the same day. The orthopedist ordered x-rays and an MRI, and subsequently diagnosed Plaintiff with a slight herniation of the L4-L5 vertebrae. Macchia was referred to an anesthesiologist for a cortisone shot. The anesthesiologist determined that cortisone was not appropriate treatment and instead returned Plaintiff to the orthopedist for additional examination. Plaintiff underwent a second MRI the next morning, which revealed that two cervical vertebrae were pressing on her spinal cord. On January 12, 2001, Plaintiff underwent an emergency anterior cervical laminectomy. During the

six months following her surgery, Plaintiff's condition first improved and then deteriorated again. The orthopedist recommended additional surgery. After Plaintiff sought a second opinion from a neurosurgeon, who concurred, Plaintiff underwent a second spinal surgery in July 2001.

At some point between January 2001 and October 2001, Plaintiff filed a worker's compensation claim with the State of Illinois Industrial Commission. The Industrial Commission found that Plaintiff was entitled to worker's compensation for the time period spanning her first surgery on January 12, 2001, until her return to work on October 1, 2001. Plaintiff received worker's compensation payments from January 10, 2001 until June, 22, 2001, when she alleges that Defendant "cut off" her compensation.

Plaintiff returned to work at LUMC on October 1, 2001. She had restrictions on lifting, overhead work, and required ergonomic changes to her workstation. Around September 2002, Plaintiff's work restrictions were amended to include no more than two hours of typing per eight hour work day. At the end of September 2002, LUMC Human Resources informed Plaintiff that they were no longer able to accommodate her restrictions and would try to locate another job for her. In December 2002, Plaintiff was placed on long-term medical leave under the Family Medical Leave Act. Between December 2002 and April 2003, Plaintiff inquired about several jobs at LUMC but was advised that her restrictions disqualified her from each.

On April 3, 2003, LUMC offered Plaintiff a job as a service representative in the General Medical Clinic. Plaintiff inquired about accommodations for her work restrictions and was told that there would be none; she could either take the job or she was "out." Plaintiff decided to accept the position, despite the fact that there were no accommodations for her work restrictions. Plaintiff's work performance was criticized as slow, tardy, and lagging behind that of her co-

workers. In August 2003, Plaintiff's orthopedist sent a letter to LUMC's Occupation Health physician, informing LUMC that Plaintiff's restrictions were "permanent and should not be ignored."

On January 19, 2004, Plaintiff was terminated for failure to perform job duties and unprofessional behavior. Plaintiff timely appealed the termination; her appeal was denied. On June 14, 2004, Plaintiff filed a disability discrimination charge with the Illinois Department of Human Rights, which was simultaneously cross-filed with the Equal Employment Opportunity Commission. Plaintiff received her EEOC right-to-sue letter on June 28, 2004. Plaintiff filed her complaint against LUMC on July 30, 2004.

## II. Motion to Dismiss Standard

In reviewing a motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), the district court employs the familiar standard from Rule 12(b)(6) and must accept all well-pleaded factual allegations as true and draw all reasonable inferences in favor of the plaintiff. See Transit Exp. Inc. v. Ettinger, 246 F.3d 1018, 1023 (7th Cir. 2001). On a motion to dismiss under Rule 12(b)(1), the plaintiff bears the burden of establishing that the jurisdictional requirements have been met. Kontos v. Dep't of Labor, 826 F.2d 573, 576 (7th Cir. 1987). When a party moves for dismissal under Rule 12(b)(1), the nonmoving party must provide competent proof of jurisdictional facts to support its allegations. Thomason v. Gaskill, 315 U.S. 442, 446 (1942); Kontos, 826 F.2d at 576. Unlike a Motion to Dismiss under Rule 12(b)(6), however, the parties are permitted to submit evidence outside the four corners of the complaint to address the jurisdictional question. See Capitol Leasing Co. v. F.D.I.C., 999 F.2d 188, 191 (7th Cir. 1993).

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests whether the Plaintiff has properly stated a claim for which relief may be granted. Pickrel v. City of Springfield, Ill., 45 F.3d 1115 (7th Cir. 1995). Therefore, when reviewing a motion to dismiss for failure to state a claim, the court must accept as true all of the plaintiff's well-pleaded factual allegations, and draw all reasonable inferences in the plaintiff's favor. Id. Thus, the court will dismiss a complaint under Rule 12(b)(6) only if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Ledford v. Sullivan, 105 F.3d 354, 357 (7th Cir. 1997) (quoting Hishon v. King & Spalding, 467 U.S. 69, 78 (1984)). Any ambiguities are construed in favor of the plaintiff. Curtis v. Bembenek, 48 F.3d 281, 283 (7th Cir. 1995). However, the court need "not strain to find inferences favorable to the plaintiffs which are not apparent on the face of th[e] . . . complaint." Coates v. Illinois State Bd. of Ed., 559 F.2d 445, 447 (7th Cir. 1977).

## III. Analysis

### A. Count II–Macchia's Retaliation in Violation of the Americans with Disabilities Act

LUMC's motion asserts that Plaintiff's Count II should be dismissed under Rule 12(b)(6) because Plaintiff failed to exhaust her administrative remedies as required by the ADA. Specifically, LUMC argues that Plaintiff failed to include a retaliation claim in her IDHR/EEOC discrimination charge and therefore may not bring it in the instant lawsuit. Macchia's IDHR/EEOC Charge of Discrimination form shows that Plaintiff claimed that she was discriminated against based on disability; "disability" is the only check-box option Plaintiff selected, although there is a separate box for "retaliation" in the same row of check-boxes on the

form. The narrative of Plaintiff's discrimination charge likewise focuses on disability discrimination and does not mention retaliation.[1]

Plaintiffs in employment discrimination suits generally must raise all claims of discrimination in their EEOC charge before they may raise them in a civil lawsuit. "An aggrieved employee may not complain to the EEOC of only certain instances of discrimination, and then seek judicial relief for different instances of discrimination." Rush v. McDonald's Corp., 966 F.2d 1104, 1110 (7th Cir. 1992); Babrocky v. Jewel Food Co., 773 F.2d 857, 863 (7th Cir. 1985). The Seventh Circuit has addressed the question of whether a claim raised in a lawsuit alleging discrimination must be perfectly or completely congruent with the original EEOC discrimination charge. See, e.g., McKenzie v. Illinois Department of Transportation, 92 F.3d 473 (7th Cir. 1996); Rush, 966 F.2d 1104 (7th Cir. 1992); Babrocky, 773 F.2d 857 (7th Cir. 1985). A two-part test is used to determine whether a plaintiff may bring a claim that is not identified in the EEOC charge. The charge must be 1) "like or reasonably related to the allegations of the charge"; and 2) "growing out of such allegations." McKenzie, 92 F.3d at 481. Both elements of the test must be met in order to permit a plaintiff to bring a claim that was not included in the original charge.

The reasons that plaintiffs cannot substitute one theory of discrimination for another between the time she files her EEOC charge and her complaint are to give the EEOC and the employer an opportunity to settle the dispute through "conference, conciliation, and persuasion,"

---

[1]The text of Macchia's narrative charge reads "I. I was hired by Respondent in September 1998 as Service Representative. On December 15, 2000, I injured myself while at work which resulted in my disability. Since September 23, 2002 and continuing, Respondent refused to provide me with a reasonable accommodation. Respondent also refused to hire me into available position [sic] which I can perform without any accommodation. In April 2003 Respondent forced me to accept a service representative position with no reasonable accommodation. On January 19, 2004, I was discharged from my position. II. I believe that Respondent discriminated against me because of my disability, in violation of the Americans with Disabilities Act of 1990."

and to give the employer "some warning" of the grounds for the employee's grievance. Cheek v. Western and Southern Life Ins. Co., 31 F.3d 497, 500 (7th Cir. 1994) (citations omitted). This uniformity rule is met if the claims raised in the complaint are "alike or reasonably related" to the EEOC charge, and are a reasonable outgrowth of such allegations. McKenzie, 92 F.3d at 481. A claim is "alike or reasonably related" if "there is a factual relationship between them," meaning that "the EEOC charge and the complaint must, at minimum, describe the *same conduct* and implicate the *same individuals*." Cheek, 31 F.3d at 501 (citing Rush v. McDonald's Corp., 966 F.2d at 1110).

In Cheek, the plaintiff filed a civil complaint, alleging that her district manager had a practice of assigning female employees to less financially-successful insurance sales routes and that he discriminated against her specifically because of her sex by transferring her from one route to another, less-profitable route. Cheek, 31 F.3d at 502. Cheek's EEOC charge, however, alleged that Cheek's sales manager "constantly intimidated" her and forced her to pay her clients' insurance premiums, while three of her male coworkers had been neither intimidated nor forced to pay their clients' premiums. Id. at 499, 502. It did not mention sex discrimination, or allege sufficient facts supporting a sex discrimination charge. The Seventh Circuit found the charge "unrelated to the claims ... in at least two ways; the type of conduct alleged to be discriminatory, and the identity of the individuals involved." Id. at 502. Noting that although courts apply a liberal pleading standard to allegations in an EEOC charge because laypersons draft them, frequently without the assistance of an attorney, the Cheek court stated "[plaintiff] must at least have described, with some degree of specificity, the conduct she considered discriminatory." Id. Because she had not done so, and because there was no clear indication that Cheek intended for

the EEOC to investigate the allegations raised in her civil complaint, id., the court found that the allegations in her complaint were unrelated to those in her EEOC charge.

Here, Macchia's IDHR/EEOC charge alleges discrimination based on disability. Plaintiff checked only the disability check box on the form. This omission alone, in the view of this court, would not be enough to defeat the liberal pleading standard for EEOC charges. Plaintiff argues that her retaliation claim is reasonably related to her discrimination in employment claim because the events underlying both claims happened "in the same time frame, and involved the same parties and the same facts." Pl.'s Resp. Br. at 4. Plaintiff argues that the fact that she "did not identify any specific individuals" in her discrimination charge, but rather referred to LUMC as a whole, supports a finding that the allegations in the charge and the claims in the complaint satisfy the Seventh Circuit's test. This is insufficient. Plaintiff's narrative, however, describes her termination as occurring after Defendant allegedly "forced [her] to accept a service representative position with no reasonable accommodation." Pl.'s EEOC Charge.

Macchia's narrative is more akin to Jenkins v. Blue Cross Mutual Hospital Insurance, Inc., 538 F.2d 164 (7th Cir. 1976) (en banc), in which the plaintiff, a black woman, brought a sex and race discrimination suit against her former employer. Prior to filing suit, the plaintiff had filed an EEOC charge, alleging only race discrimination. However, the Seventh Circuit found in Jenkins that "the allegations in the EEOC charge sufficiently alleged sex discrimination to allow Jenkins to pursue a claim of sex discrimination in federal court." Id. at 504. Macchia's EEOC charge likewise raises a reasonable inference that her termination was based on retaliation, in addition to disability discrimination. See Pickrel v. City of Springfield, Ill., 45 F.3d 1115 (7th Cir. 1995). Finally, we must consider the fact that Macchia is a layperson who filled out her EEOC

charge without the assistance of an attorney. It would be counter to the purpose of both the IDHR and the EEOC to dismiss Macchia's retaliation claim simply because it failed to incorporate the correct technical legal terminology. See Cheek, 31 F.3d at 500. In short, Macchia's charge sufficed to put LUMC on notice of a pending federal lawsuit and of the facts on which the suit would be based.

The narrative in Plaintiff's charge is ambiguous, but may be fairly read to allege that she was terminated for having complained of disability discrimination. Because a fair reading of the narrative would support an inference of retaliation and because of the liberal pleading standard applied to EEOC charges, this court finds the Plaintiff has met the requirements of Rule 12(b)(6). For these reasons, Defendant's motion to dismiss Plaintiff's Count II retaliation claim is denied.

### B. Count IV–Plaintiff's Claim for Wrongful Termination Under Illinois Law

LUMC seeks to dismiss Count IV of Plaintiff's complaint for lack of subject matter jurisdiction. Defendant argues that Plaintiff's wrongful termination claim is, in actuality, a common law claim of retaliatory discharge for violating Plaintiff's civil rights. As such, Defendant contends that this court lacks subject matter jurisdiction because the Illinois Human Rights Act, 775 ILCS 775/1-101 *et seq.*, gives exclusive jurisdiction over civil rights violations to the Illinois Human Rights Commission. Corluka v. Bridgford Foods of Illinois, Inc., 284 Ill.App.3d 190, 193, 671 N.E.2d 814, 817 (1st Dist. 1996).

The IHRA, however, does not preempt all common law tort claims even when they arise in the context of employment law. Clay v. Quartet Mfg. Co., 644 F. Supp. 56 (N.D. Ill. 1986). But where state common law claims are inextricably linked to allegations of discrimination, such claims must be construed as alleging civil rights violations under the Illinois Human Rights Act.

Maksimovic v. Tsogalis, 177 Ill.2d 511, 687 N.E.2d 21 (Ill. 1997); Geise v. Phoenix Co. of Chicago, Inc., 159 Ill.2d 507, 639 N.E.2d 1273 (Ill. 1994). The IHRA limits federal and state court jurisdiction by removing all "civil rights violations" covered by the Act from those court's purview. Geise, 159 Ill.2d at 515, 639 N.E.2d at 1276. A "civil rights violation" occurs when an employee is terminated because of "unlawful discrimination," including discrimination based on an employee's handicap. 775 ILCS 5/1-103. A wrongful termination claim based on discrimination against a protected class, such as disability, is preempted by the IHRA when "the elements of the tort require proof of nothing more than that proscribed by the IHRA." Bailey v. Unocal Corp., 700 F. Supp. 396, 404 (N.D. Ill. 1988). Using these definitions, Defendant argues that "the Act provides a means of redress for civil rights violation [*sic*] to the exclusion of common law retaliatory discharge actions and thereby preempts such common law retaliatory discharge claims ... as is alleged by Macchia." Def.'s Br. at 6. Defendant thus appears to argue that Macchia's allegations of disability discrimination convert her claim for wrongful termination into a civil rights violation. This misinterprets Illinois law.

The crucial question in determining whether a claim is subject to IHRA preemption is not whether the claim is in any way linked to a civil rights violation. The question is rather whether the claim is "inextricably linked" to a civil rights violation. Maksimovic, 177 Ill.2d at 517, 687 N.E.2d at 23; Geise, 159 Ill.2d at 516-17, 639 N.E.2d at 458. In Maksimovic, the plaintiff alleged that her supervisor subjected her to repeated sexual harassment. She also brought claims of assault, battery, and false imprisonment. In its determination that her claims were not preempted by the IHRA, the Illinois Supreme Court stated that "[t]he sexual harassment aspect of this case is merely incidental to what are otherwise ordinary common law tort claims."

As with the plaintiff in Maksimovic, Macchia's wrongful termination claim stands independent of her allegations of disability discrimination. Macchia does not refer to her disability discrimination allegations in her wrongful termination claim. Moreover, her wrongful termination claim does not depend on disability discrimination prohibitions to be viable. If the court followed Defendant's arguments, however, and converted a workplace injury combined with a worker's compensation claim into a civil rights violation, then plaintiffs would never be able to sue in court for retaliatory discharge for filing a workers' compensation claim. Such a result would run counter to the Illinois Supreme Court's decision in Kelsay v. Motorola, Inc., 74 Ill.2d 172, 384 N.E.2d 353 (Ill. 1978) (creating cause of action for retaliatory discharge when worker is fired for exercising rights under Workmen's Compensation Act). For these reasons, Plaintiff's Count IV for wrongful termination remains within the jurisdiction of this court and survives Defendant's motion to dismiss.

### C. Count V–Plaintiff's Claim of Intentional Infliction of Emotional Distress

Defendant LUMC moves for dismissal of Plaintiff's claim for intentional infliction of emotional distress on the ground that Plaintiff fails to state a claim upon which relief can be grated and for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1), (6). Macchia claims that LUMC's conduct in "intentionally discriminating and harassing [her] because of [her] disability" and in terminating her was extreme and outrageous, and caused her severe emotional distress. Pl.'s Compl. at ¶¶ 71-77. Defendant argues that Plaintiff's claim is "inextricably linked" with an alleged civil rights violation and therefore is preempted by the Illinois Human Rights Act. Moreover, Defendant asserts that Illinois courts do not recognize a cause of action for intentional infliction of emotional distress for employment termination and retaliatory conduct.

Def.'s Br. at 8. Plaintiff asserts that her intentional infliction of emotional distress claim stands apart from her disability discrimination claim. She argues that because she has alleged the common law torts of wrongful termination and intentional infliction of emotional distress, the IHRA does not preempt her cause of action. This court finds such an argument to be plausible and therefore declines to dismiss plaintiff's claims under Rule 12(b)(1). We will analyze the claim under Defendant's Rule 12(b)(6) argument instead.

Illinois law governs Macchia's intentional infliction of emotional distress claim. See Doe v. Calumet City, 161 Ill.2d 374, 392, 641 N.E.2d 498, 506 (1994). Illinois is a fact-pleading jurisdiction, and a plaintiff must "allege facts essential to the cause of action under which recovery is sought." Welsh v. Commonwealth Edison Co., 306 Ill.App.3d 148, 155, 713 N.E.2d 679, 684 (1st Dist. 1999). Under Illinois law, to state a claim for intentional infliction of emotional distress, a plaintiff must allege that (1) the defendant's conduct was extreme and outrageous; (2) the defendant intended to inflict severe emotional distress or was aware that there was a high probability that its conduct would do so; and (3) the defendant's conduct did in fact cause severe emotional distress. Id. However, Illinois courts generally have declined to find alleged retaliatory conduct by an employer, including employment termination sufficient to support a claim for intentional infliction of emotional distress. "This reluctance seems to be grounded in a fear that, if the anxiety and stress resulting from discipline, job transfers, or even terminations could form the basis of an action for emotional distress, virtually every employee would have a cause of action." Welsh, 306 Ill.App.3d at 154, 713 N.E.2d at 684.

In the present case, Macchia provides insufficient facts in her pleading to support an inference that LUMC's actions can be characterized as "truly extreme and outrageous," McGrath

v. Fahey, 126 Ill.2d 78.86, 533 N.E.2d 806 (1988), or "beyond all possible bounds of decency." Public Finance Corp. v. Davis, 66 Ill.2d 85, 89-90, 360 N.E.2d 765 (1976). Moreover, Macchia alleges no specific or essential facts in her Count V claim that she does not allege in her previous ADA claim; Count V simply incorporates by reference the facts pled in the previous paragraphs. Although the complaint alleges that Macchia suffered severe emotional distress and emotional pain and suffering, it does so in conclusory fashion and does not provide support for the inference that her reaction reached the level of severity necessary to support the tort under Illinois law. Therefore, because Illinois courts generally disfavor application of the tort to employment termination and because Plaintiff failed to allege specific and essential facts to support the claim, Count V is dismissed with prejudice.

**Conclusion**

For the foregoing reasons, Defendant's Motion to Dismiss is denied as to Plaintiff's Counts II and IV, and granted as to Plaintiff's Count V.

Enter:

David H. Coar
United States District Judge

Dated: **October 19, 2004**