# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| LINDA MACCHIA )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>LOYOLA UNIVERSITY MEDICAL )<br>CENTER, )<br>)<br>Defendant. ) | No. 04-CV-5049<br><br>HONORABLE DAVID H. COAR |

## MEMORANDUM OPINION AND ORDER

Before this Court is Defendant Loyola University Medical Center's motion for summary judgment against Plaintiff Linda Macchia. On July 30, 2004, Macchia filed a five-count complaint against Loyola, alleging disability discrimination under the Americans with Disabilities Act, 42 U.S.C. §§12101 *et. seq.*, (ADA), retaliation in violation of the ADA, a state law claim of retaliation for filing a workers' compensation claim, a state law wrongful termination claim, and a state law claim for the intentional infliction of emotional distress. On October 19, 2004, the intentional infliction of emotional distress count was dismissed. For the reasons stated below, Defendant's motion for summary judgment is GRANTED.

### Background[1]

Defendant hired Macchia for the position of service representative in 1998.[2] She held this

---

[1] All facts are taken from the parties' L.R. 56.1 submissions.

[2] Defendant claims that Plaintiff was hired on September 21, 1998 and cites to her deposition testimony. Plaintiff does not dispute this fact in her response to Defendant's Rule 56.1(a)(3) statement of facts. Instead, she submits a statement of additional facts in which she

-1-

position in various departments until her termination on January 19, 2004. Generally, her duties as service representative involved handling patient check-in and check-out, data entry on the computer, answering telephones, preparing patient charts, scheduling patient appointments, and other secretarial duties.

On December 15, 2000, Macchia slipped and fell in the Loyola employee parking lot Four days later, she reported the fall to her supervisor. She was sent to Loyola's Occupational Health Services Clinic, where she was examined and released to return to work without any restrictions. On December 27, 2000, Macchia "walked off" work without authorization. She claims it was because the fall left her unable to perform her work duties. She presented no doctor's certificate and was not disciplined for leaving work without authorization.

Macchia did not return to work until October 1, 2001. Prior to her return, she had back surgery on January 12, 2001 and again on July 9, 2001. In September 2001, her doctor, Dr. Alexander Ghanayem, issued her a certificate to return to work on October 1, 2001, provided she did not lift more than fifteen pounds, did no overhead work, and was excused at times to complete physical therapy. On September 20, 2001, Macchia's supervisor advised Loyola's Worker's Compensation Administrator that she was able to accommodate Macchia's work restrictions. On October 1, 2001, Macchia returned to work.

Between October 17, 2001 and March 11, 2002, Macchia submitted nine requests to be off work for medical appointments; these requests were all granted. On August 28, 2002, Dr.

---

states that she was hired on November 18, 1998, and cites to what appears to be an affidavit of her own statements. Regardless, the precise date of employment is not material to the dispute at hand.

Ghanayem placed an additional work restriction on Macchia: he restricted her to typing no more than two hours a day. This request was allowed and accommodated by Loyola.

On December 18, 2002, after consulting with her attorney, Macchia requested FMLA leave for her back condition. She was granted FMLA leave from December 18, 2002, through April 14, 2003. In February, 2003, Macchia underwent an independent medical examination by Dr. Morris Marc Soriano, a neurologist. He determined that she was physically able to return to work at full duty with no restrictions. Dr. Soriano also noted that Macchia was "capable of much more strenuous activities than that required of a secretary" and that "she readily admits that she is able to drive, undertake laundry duties, clean house, cook, and perform other activities of daily living...". In March 2003, Loyola was notified by its Workers' Compensation Adminstrator that Macchia was medically fit to return to work at full duty with no restrictions.

On April 11, 2003, Defendant's Director of Human Resources Sherron Glenn offered Macchia a position as full-time Service Representative in the General Medicine Department.. That day, Macchia met with her supervisor Marge Gee and human resources manager Carolyn Nelson in order to discuss the position.[3] The parties agree that Macchia accepted the position, starting April 14, 2003, with the understanding that there would be no restrictions placed on her. On April 14, 2003, she went to Loyola's occupational health department, where she presented herself for clearance. Dr. Lisa Woody, the department's medical director, released Macchia to work permanently and without restrictions.

---

[3] There is some disagreement as to discussions that took place at that meeting. Macchia claims that Nelson told her it was be "this job or no job" at Loyola; Defendant claims there were no discussions between Macchia and Nelson about the repercussions if Macchia did not take the job.

In the four months immediately after she resumed work, Macchia was absent several times. She was granted permission to miss work–and did miss work–on April 16, April 25, May 8, and May 9, 2003. She was also absent on May 27 and July 29, 2003, although she was not granted permission to miss those days. During those months, Macchia was also disciplined several times. On June 26 and June 27, 2003, Macchia incurred disciplinary incidents for failure to fulfill her job duties. On July 1, 2003, Macchia was counseled for her poor work attitude, failure to adhere to established customer services principles, and failure to enter charges for patients. On July 30, 2003, Macchia was issued a written disciplinary warning for failing to fulfill her job duties by not achieving 95% accuracy on patients audits and poor attendance. She was advised that if her attendance did not improve and her behavior was not corrected, she would be suspended.

During this period, Macchia attempted to transfer out of the General Medicine department. Her first request for a transfer–made July 19, 2003–was denied because she had not been in her position for at least six months, as required by company policy.

On September 4, 2003, Macchia was placed on a work improvement plan because of her continuing decline in work performance, failure to indicate diagnoses on lab reports, failure to make and document patient appointments appropriately and her decline in accuracy with respect to patient audits. On October 23, 2003, Macchia submitted another request to transfer to another department. She was told that she was not eligible for the transfer in accordance with company policy because she was on a work improvement plan. On November 10, 2003, Macchia was issued a two-day working suspension without loss of pay for failure to fulfill her job duties, refusal to follow instructions, insubordination for leaving her work station after being told to stay

in the patient check-in area and for making a scheduling error in a doctor's schedule. She was notified that if her behavior was not corrected, the next step would be termination. The next day, she again requested a transfer to another department and was again notified that she was ineligible because of her ongoing disciplinary problems. The day after that, she failed to "punch-out" of work, as required. On November 25, 2003, Macchia was placed on another work improvement plan, which included a suspension with no lost pay. She was placed on the plan because of "no overall substantial improvement" in her work performance. She was again notified that she might be terminated if her work performance did not substantially improve by a final progress review date of December 29, 2003.

On December 17, 18, and 19, 2003, Macchia left work, claiming illness. On December 24 and December 26, 2003, Macchia failed to punch-out from work. On January 4, 2004, a patient appeared at the clinic for an appointment that was scheduled for another day. Macchia contends that she gave the patient an opportunity to see a nurse, but that the patient refused and said he preferred to return on the day he was scheduled to see his doctor. Loyola claims that she told the patient he was confused, that he should go home, and that he should come back when he had an appointment to see the doctor. Neither party disputes that Gee intervened and arranged for the patient to see a physician. On January 8 and 9, 2004, Macchia again left work, claiming she was sick. During that month, she also incorrectly scheduled a test for a patient.

On January 13, 2004, Gee recommended Macchia's termination. The termination was approved and authorized by Sherron Glenn. On January 19, 2004, Macchia was terminated for failing to fulfill job duties and unprofessional behavior. She was advised in writing for the reasons for her termination.

Macchia appealed the termination. Richard Bacchi, director of employee relations, conducted an investigation and determined that Macchia's discipline and termination was warranted, and was not the result of discrimination or retaliation.

## Standard of Review

A party seeking summary judgment has the burden of showing, through "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," that there are no genuine issues of material fact that would prevent judgment as a matter of law. Fed.R.Civ.P. 56(c). On a motion for summary judgment, courts "must construe all facts in the light most favorable to the non-moving party and draw all reasonable and justifiable inferences in favor of that party." *Allen v. Cedar Real Estate Group, LLP,* 236 F.3d 374, 380 (7th Cir. 2001). Even so, the nonmoving party may not rest upon mere allegations in the pleadings or upon conclusory statements in affidavits; rather, she must go beyond the pleadings and support her contentions with proper documentary evidence. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986).

To successfully oppose the motion for summary judgment, the non-movant must do more than raise a "metaphysical doubt" as to the material facts, *see Wolf v. Northwest Ind. Symphony Soc'y,* 250 F.3d 1136, 1141 (7th Cir.2001) (citation and quotation omitted), and instead must present definite, competent evidence to rebut the motion, *see Albiero v. City of Kankakee,* 246 F.3d 927, 932 (7th Cir. 2001); Fed.R.Civ.P. 56(c). A mere scintilla of evidence in support of the non-movant's position is not sufficient to defeat a summary judgment motion. Rather, the non-movant must provide evidence that would enable a reasonable jury to find in favor of the non-movant. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986). In ruling on a motion for

summary judgment, the Court must decide, based on admissible evidence, whether any material dispute of fact exists that requires a trial. *Waldridge v. Am. Hoechst Corp.,* 24 F.3d 918, 920 (7th Cir.1994).

Rule 56(c) mandates the entry of summary judgment against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and in which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322. A non-moving party who bears the burden of proof on a specific issue must demonstrate by specific factual allegations that there is a genuine issue of material fact in dispute. *McMillian v. Svetanoff,* 878 F.2d 186, 188 (7th Cir.1989). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex,* 477 U.S. at 323..

<u>Analysis</u>

*Count I: Disability Discrimination in violation of the ADA*

The ADA states that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability." 42 U.S.C. §12112(a). A disability discrimination claim can be established in one of two ways: the plaintiff may either offer direct evidence of discriminatory intent or the plaintiff may use an indirect burden-shifting approach similar to the one established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 79 (1973). *See Pugh v. City of Attica, Ind.*, 259 F.3d 619, 625-626 (7th Cir. 2001).

Macchia has opted to proceed under the indirect approach. She therefore bears the initial burden of proofing a prima facie case of disability discrimination, which means that she must demonstrate that she 1) is disabled within the meaning of the ADA; 2) is qualified to perform the

essential functions of her job either with or without reasonable accommodation; and 3) suffered from an adverse employment decision because of her disability. *See id.* at 626; *see also Kupstas v. City of Greenwood,* 398 F.3d 609, 611 (7th Cir.2005). If a plaintiff cannot establish that she is disabled under the ADA, the Court need not examine the remaining elements of a prima facie case. *See Spath v. Hayes Wheels Int'l-Indiana, Inc.*, 211 F.3d 392, 396 (7th Cir. 2000).

Defendant argues that Macchia cannot be a qualified individual with a disability because she does not have a disability as defined by the ADA. A plaintiff may establish that she is disabled within the meaning of the ADA by showing "physical or mental impairment that substantially limits one or more of the major life activities," "a record of such an impairment," or the status of "being regarded as having such an impairment." 42 U.S.C. § 12102(2); 29 C.F.R. § 1630.2(g). In the case of an individual with an impairment, the impairment must substantially limit one of her major life activities. 42 U.S.C. § 12101(2)(A). Major life activities include "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i). A person is "substantially limited" if, compared to the average person in the general population, she cannot perform or is limited in the manner in or extent to which she can perform one of the recognized activities. *Dvorak v. Mostardi Platt Associates, Inc.,* 289 F.3d 479, 483 (7th Cir. 2002); 29 C.F.R. § 1630.2(j)(ii); *see also Emerson v. Northern States Power Co.,* 256 F.3d 506, 511 (7th Cir.2001). As the Seventh Circuit has noted, the Supreme Court has concluded that "the inability to perform many tasks associated with a particular job...would have only limited relevance to the inquiry of whether the impairment was substantially limiting because those tasks might not be an important part of most people's daily

lives." *Mack v. Great Dane Trailers*, 308 F.3d 776, 781 (7th Cir. 2002) (citing *Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 200 (2002)).

Macchia argues that she is limited in the major life activity of working given the permanent nature of her impairment, the type of work for which she has experience and training, and the restrictions placed on her. Even if Macchia is correct that her impairment is permanent, the mere fact of permanency is not a sufficient to convert an impairment into a disability recognized by the ADA. As for the fact that she believes she will be limited with respect to secretarial work, the Supreme Court has noted that tasks unique to a particular job "are not necessarily important parts of most people's lives." *Toyota*, 534 U.S. at 200. While "[t]here may well be cases in which, because of the nature of the impairment, one could, from the work-restriction alone, infer a broader limitation on a major life activity[,]" this is not one of those cases. *Mack v. Great Dane Trailers*, 308 F.3d 776, 781 (7th Cir. 2002).[4]

Furthermore, the restrictions placed on Macchia are not particularly severe: Dr. Ghanayem wrote that Macchia should do no overhead work, should lift no more than 15 pounds, should do no more than two hours of typing a day, and should be given an ergonomic work station. Although Defendant does not offer–and this Court has not found–a Seventh Circuit decision that addresses the precise type of limitations that affect Plaintiff, the decisions in *Mays v. Principi,* 301 F.3d 866 (2002) and *Contreras v. SunCast Corporation,* 237 F.3d 756 (7th Cir. 2001), lead this Court to conclude that such a limitation is insufficient. In light of precedent, this

---

[4] While this Court will assume that Macchia cannot work as a secretary because of her disability for the purposes of this motion, it is unclear that such a proposition is factually true.

Court fails to see how Plaintiff's impairment constitutes a significant restriction on her capacity to work.

In *Mays*, the plaintiff, a nurse, suffered from a back injury. *See Mays*, 301 F.3d 866. Like Macchia, she was restricted to light work. Her physician opined that the injury was permanent and restricted her to "sedentary work, maximum lifts of 10 pounds, no work at or above shoulder level, and no patient lifting," but added that she could return to her job as a light-duty nurse. Her employer reassigned her to a clerical job. She claimed that the reassignment failed to provide proper accommodation for her disability.

The Seventh Circuit was not presented with the question of whether the plaintiff was disabled in *Mays*, as it had not been raised in the district court. Nevertheless, the Court of Appeals expressed "doubt" about whether lifting more than ten pounds was a major life activity. *Mays*, 301 F.3d at 869 (citations omitted). After noting that "[i]t is not as if the plaintiff were missing an arm[,]" the Court of Appeals stated that "[t]he number of Americans restricted by back problems to light work is legion. They are not disabled." *Id.* at 869-870 (citations omitted). It went on to add, "Any challenge to the plaintiff's claim to be disabled has been forfeited, but we have thought it prudent to register our doubts lest our opinion be assumed by its silence to endorse the proposition that a back injury that merely limits a person's ability to lift heavy objects creates a disability within the meaning of federal disability law." *Id.* at 870.

The Seventh Circuit addressed the issue of lifting limitations in *Contreras,* 237 F.3d 756. The *Contreras* plaintiff, an injured forklift operator, argued that he was substantially limited in the major life activity of working because he was unable to lift in excess of 45 pounds for a long period of time, unable to engage in strenuous work, and unable to drive a forklift for more than

four hours a day. The Seventh Circuit disagreed, stating that even after taking the plaintiff's claims as fact, it failed to see "how such inabilities constitute a significant restriction on one's capacity to work, as the term is understood within the ADA." *Id.* at 763.

In *Contreras*, the Court of Appeals cited several cases from other circuits that did not find weight limits a significant restriction on an individual's ability to work. *See id.* (noting: "though this precise claim has not found its way into our published case law, we note that other circuits have found those limitations do not qualify as a substantial limitation on working (and thus a disability under the ADA)" and citing *Williams v. Channel Master Satellite Sys.,* 101 F.3d 346, 349 (4th Cir. 1996)(holding that a "twenty-five pound lifting limitation–particularly when compared to an average person's abilities–does not constitute a significant restriction on one's ability to lift, work, or perform any other major life activity."); *Aucutt v. Six Flags Over Mid-America*, 85 F.3d 1311, 1319 (8th Cir. 1996)(plaintiff failed to show he was substantially limited in major life activities when only limitation placed on him was 25-pound lifting restriction); *Ray v. Glidden Co.*, 85 F.3d 227, 228-29 (5th Cir. 1996)(inability to continuously lift containers weighing on average 44-56 pounds did not render individual substantially limited in major life activities of lifting or working); *Wooten v. Farmland Foods*, 58 F.3d 382, 384, 386 (8th Cir. 1995)(no substantial limitation to major life activity of workig where plaintiff was restricted to light duty with no working in cold environments and no lifting items weighing more than 20 pounds.)).

Plaintiff does not distinguish either *Mays* or *Contreras*. Like the plaintiff in *Contreras*, she also does not rely on Seventh Circuit precedent dealing with individuals who face a wide array of restrictions. *See Contreras*, 237 F.3d at 765, fn.5 (noting that "what is significant about

these cases is the court's emphasis on the breadth of restrictions placed on the plaintiffs and their doctors' recommendations concerning how their respective injuries would affect their ability to obtain other employment."). Like the plaintiff in *Contreras*, Macchia has very specific restrictions and has offered no evidence–other than the restrictions themselves–to show that she is limited in her ability to engage in a class of jobs. She is able to stand, walk, sit, hear, speak, breathe, learn, drive, perform manual tasks, type (albeit for only two hours a day, Macchia claims), operate a computer, lift objects, grasp objects, think, care for herself and engage in sexual relations.

The parties dispute whether Macchia's is actually restricted in the activities she can perform; this dispute need not be resolved at this stage. Even assuming that Plaintiff has correctly stated the nature of her impairment, this Court concludes that the impairment as described by Plaintiff does not qualify as a disability recognized by the ADA.

*Count II: Retaliation in violation of the ADA*

In order to establish a prima facie case of retaliation in violation of the ADA, Macchia must show that she 1) engaged in statutorily protected conduct 2) performed her job according to Loyola's legitimate expectation 3) despite meeting those expectations, suffered a materially adverse employment action, and 4) was treated less favorably than similarly situated employees who did not engage in statutorily protected activity. *See Hilt-Dyson v. City of Chicago*, 282 F.3d 456, 465 (7th Cir. 2002). Because Macchia fails to show that she was treated less favorably than similarly situated employees who did not engage in statutorily protected activity, she fails to survive summary judgment.

A similarly situated employee is an employee who is "'directly comparable to [the plaintiff] in all material respects.'" *Bio v. Federal Express Corp.,* 424 F.3d 593, 597 (7th Cir. 2005)(citation omitted). When considering whether two employees are directly comparable, reviewing courts "must look at all relevant factors, including whether the employees '(i) held the same job description, (ii) were subject to the same standards, (iii) were subordinate to the same supervisor, and (iv) had comparable experience, education, and other qualifications--provided the employer considered these latter factors in making the personnel decision.'" *Id.* (citation omitted). Macchia provides this Court with no such information. She fails to provide sufficient identifying information on any other employees such that this Court could find them similarly situated.

Instead, she submits two documents and one citation to deposition testimony that purportedly establish that she was treated less favorably than similarly situated employees. The first document appears to be a portion of an audit of the check-out process at the ambulatory services unit. The other document is an unsigned, unaddressed, unauthenticated note that Macchia claims she wrote and gave to Bacchi. The deposition testimony, from McGee, states that Plaintiff was disciplined differently than other employees because the circumstances calling for discipline were different.

The chart, which Macchia notes contains mistakes, is not accompanied by information explaining the significance of the figures cited. While the stray sheets of paper apparently show that Macchia was treated worse than others similarly situated, it is unclear that those sheets

-13-

comprise the entire chart, that the chart was actually compiled by Loyola, or that the chart is in any way reliable.[5]

The meager information in the chart is not enough to establish a prima facie case of retaliation: the chart does not establish that the employees were similarly situated or were treated more favorably than Macchia. At best, Macchia can argue that she was audited more frequently than other employees listed on the chart, employees who appear to have performed better on the initial audits than she did. She does not, however, explain how those employees were similarly situated to her. She gives no further information about the employees other than the chart, nor does she explain how to interpret the chart.

The note is not evidence that Macchia was not permitted to choose which files would be audited and was not given advance notice of the audits of the type given to similarly situated employees. Again, she does not establish how the other employees were similarly situated to her. The note, dated 9/23/03, states in part that "Charts for audits are from, me when I am away from my desk. No one, but 1 time has asked for my charts. Others girls are given a notice to save 5 charts. Why not me!! A set-up! *Yes*!" (emphasis in original.).

The Seventh Circuit noted in *Smith v. City of Chicago,* 242 F.3d 737, 741 (7th Cir.2001) that "[i]n granting summary judgment, a 'court may consider any material that would be admissible or usable at trial,' including properly authenticated and admissible documents or exhibits." (citations and quotations omitted)). See also *Woods v. City of Chicago,* 234 F.3d 979,

---

[5] In fact, Macchia herself calls the reliability of the chart into question by pointing out what she considers inconsistencies. Whether they are actual inconsistencies is a determination this Court cannot make, as Macchia provides no information on how to perform the calculations she believes are incorrectly performed.

988 (7th Cir.2000) (noting that court may consider "properly authenticated and admissible documents or exhibits" in evaluating a motion for summary judgment); 10A Charles Alan Wright et al., *Federal Practice & Procedure* § 2722, at 379-80 & 382-84 (1998) ("Rule 56(e) requires that sworn or certified copies of all papers referred to in an affidavit must be attached to or served with that affidavit.... To be admissible, documents must be authenticated by and attached to an affidavit that meets the requirements of Rule 56(e) and the affiant must be a person through whom the exhibits could be admitted into evidence.").

Macchia attempts to introduce this note into the record without any supporting affidavit verifying its authenticity. The note is therefore inadmissible and cannot be considered for purposes of summary judgment. *See Scott v. Edinburg* 346 F.3d 752, 759 -760 (7th Cir. 2003)(citing *Haywood v. Lucent Techs., Inc.,* 323 F.3d 524, 533 (7th Cir.2003); *see also* Fed.R.Civ.P. 56(e); Fed.R.Evid. 901(a).

Macchia also claims that Gee singled her out by suspending her for making a scheduling error but did not suspend others who made scheduling errors. In support, Macchia offers deposition testimony from Gee explaining how, after investigating such errors, she determined that Macchia was different from the other employees because her error was not a single, isolated event. Macchia offers no hint as to the identity of the others who made the errors, information regarding the specific nature of the errors, or similar information that would allow this Court to conclude that those committing the errors were similarly situated. Gee's testimony in isolation does not establish that Macchia was treated any differently than similarly situated employees. Given that she has failed to establish an element of her prima facie case, Macchia's retaliation claim fails.

*Counts III and IV: State Law Claims*

Given that this Court has granted Loyola's motion for summary judgment on Macchia's federal claims, it declines to exercise supplemental jurisdiction over her pendant state law claims of retaliation for filing a worker's compensation claim (count III) and wrongful termination (count IV). *See Groce v. Eli Lilly & Co.,* 193 F.3d 496, 501 (7th Cir.1999)("it is the well-established law of this circuit that the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial.").

**Conclusion**

For the foregoing reasons, Defendant's motion for summary judgment is GRANTED. This case is CLOSED. All pending motions are MOOT and TERMINATED.

Enter:

/s/ David H. Coar
David H. Coar
United States District Judge

Dated: **March 28, 2006**